UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NASREEN YALDO,

    Plaintiff,

v.

HOMERIC TOURS, INC., LOUIS, PLC, and LOUIS CRUISE LINES LIMITED,

    Defendants.

Case No. 13-cv-13367
Honorable Laurie J. Michelson
Magistrate Judge Michael J. Hluchaniuk

**OPINION AND ORDER GRANTING
DEFENDANT LOUIS CRUISE LINES LIMITED'S MOTION TO DISMISS [23]**

Nasreen Yaldo slipped on a cruise ship's gangplank and shattered her right humerus in Greece in August 2011. She filed this action for negligence and breach of contract against the ship's operator, Defendant Louis Cruise Lines Limited ("Louis Cruises"), as well as the tour operator that sold her the cruise package, Defendant Homeric Tours, Inc. ("Homeric").[1] Louis Cruises, which is based in Greece, filed the present motion to dismiss for lack of personal jurisdiction. (Dkt. 23.) The Court has reviewed the parties' briefs (Dkt. 23, 28, 29) and finds that oral argument will not aid in resolving the pending motion. *See* E.D. Mich. LR 7.1(f)(2). As explained below, this Court does not have personal jurisdiction over Louis Cruises. The Motion to Dismiss (Dkt. 23) is therefore GRANTED and Yaldo's claims against Louis Cruises are DISMISSED.

**I.  LEGAL STANDARD**

Lack of personal jurisdiction may be asserted by motion under Federal Rule of Civil Procedure 12(b)(2). The party seeking to assert personal jurisdiction bears the burden of

---

[1] Yaldo also sued "Louis, PLC," which has not been served.

demonstrating that it exists. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). When the court rules on written submissions alone, without an evidentiary hearing, the burden is "a prima facie showing that personal jurisdiction exists." *Id.* In this procedural posture, the court does not weigh the facts disputed by the parties but instead considers the pleadings in the light most favorable to the plaintiff. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). The Court may consider the defendant's undisputed factual assertions. *Id.*

## II. FACTUAL BACKGROUND

Yaldo resides in West Bloomfield, Michigan. (Compl. ¶ 1.) She alleges in the Complaint that on August 6, 2011, she was a passenger aboard the Louis Defendants' vessel, MS Cristal, and she fell on the vessel's gangway while disembarking the ship. (Compl. ¶ 4.) The fall, she says, shattered her right humerus, "causing her serious and extensive injuries necessitating surgery." (*Id.*) Yaldo does not indicate where the MS Cristal was docked when the injury occurred. But she says it was while she was on "the seven day Greek Islands and Turkey Cruise segment" of Homeric's "Aegean Wonder Tour," which included roundtrip air travel, hotel accommodations, meals, airport and pier transfers, a $1 million dollar "Consumer Protection Guarantee," and other services. (*Id.* ¶ 16; *see also* Resp. Ex. 1.)

In an affidavit submitted for this motion, Yaldo states that while shopping at a Macy's department store in Michigan, she and a friend picked up a brochure for Homeric Tours. (Resp. Ex. 4, Yaldo Aff. ¶ 6; *see also* Resp. Ex. 3, Yaldo Dep. at 12.) From that brochure they selected the Aegean Wonder tour. (Yaldo Aff. ¶ 7.) She states further that she did not receive her ticket to board the cruise ship until she was in Athens, Greece. (*Id.* ¶ 8; *see also* Yaldo Dep. at 19.)

Yaldo alleges in the Complaint that Homeric "contracted or joint ventured" with Louis Cruises "to provide a portion" of the tour. (Compl. ¶ 5(B).) She says that "Homeric maintained a

'preferred supplier relationship' or had other contractual incentives to purchase cruise cabins with the Louis Defendants." (*Id.* ¶ 19.) She also says that Homeric and Louis Cruises "at all times engaged in a joint enterprise where Homeric bundled cruises into its promotional materials without identifying any particular supplier." (*Id.* ¶ 25.)

Yaldo acknowledges that Louis Cruises is a foreign corporation. (*See id.* at ¶ 3.) But she alleges that "Defendants actively solicited, marketed and advertised their products and services in Michigan, and to Plaintiff, through advertising, written and other in-person solicitation." (*Id.* ¶ 5(C).) She further alleges that "Defendants entered into a contract for services to be rendered in the State of Michigan as part of the provision of transportation to Greece, from Detroit Metropolitan Wayne County Airport, and the return therefrom." (*Id.* ¶ 5(D).) And that "Defendants contracted to insure a 'person, property, or risk located in this state' by the sale of travel or trip insurance to Plaintiff as part of her travel arrangements." (*Id.* ¶ 5(E).)

Yaldo says in the Complaint that she was located in Michigan "at the time of contracting and was traveling from and returning to Michigan as part of her package tour." (*Id.*) At a deposition taken by counsel for Homeric, Yaldo testified that she flew from Detroit to Toronto and then to Athens, where she boarded the ship. (Yaldo Dep. at 18.)

**III. ANALYSIS**

Personal jurisdiction may be general or specific. Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy" while general jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (e.g., domicile)." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (internal citation, quotation marks, and alteration omitted). In this case, Louis Cruises first argues that under the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), this

3

Court does not have general personal jurisdiction over Louis Cruises. (Mot. at 6–10.) Yaldo apparently concedes that point. She argues only that this Court has specific personal jurisdiction. (*See* Resp. at 6–11.) The Court therefore will not address general jurisdiction. And because the Court finds that under the Due Process clause it could not exercise personal jurisdiction over Louis Cruises, the Court also will not address Louis Cruises' argument that service of process was not valid. (*See* Mot. at 3–5.)

The Supreme Court also recently opined on specific jurisdiction. In *Walden v. Fiore*, decided at the same time as *Daimler*, the Supreme Court held that a court in Nevada could not exercise personal jurisdiction over a Georgia police officer based on his seizure of cash from a Nevada resident who was passing through an airport in Atlanta. *Walden*, 134 S. Ct. at 1126. As the Court noted, "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Id.* at 1121. Thus, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Due Process Clause's constraints upon the state of Michigan likewise constrain this Court. *See* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant[] who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."); *Conn*, 667 F.3d at 711 ("A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction

4

must be compatible with the due process requirements of the United States Constitution." (citation omitted)).

The "minimum contacts" inquiry under the Due Process Clause focuses on whether the defendant had fair warning that a particular activity could subject it to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) ("First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.").

In *Walden*, the Court focused on two aspects of this question. "First, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 134 S. Ct. at 1122. It is not sufficient to demonstrate "contacts between the plaintiff (or third parties) and the forum State." *Id.* Second, the Court said, the defendant's "minimum contacts" must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Applying these principles, the Court noted that it has "upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* The Court emphasized that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* Although "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," "a

5

defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

Yaldo argues that Louis Cruises has the requisite minimum contacts with Michigan because "after advertising its goods and services in Michigan, [it] contracted either directly or through its agent Homeric with Yaldo, a Michigan resident, who now has to deal with her consequent physical injuries suffered due to Louis Cruises' negligence." (Resp. at 9–10.) But Yaldo has not shown, through the allegations of the Complaint or the exhibits attached to her response brief, that Louis Cruises itself advertised and sold its goods and services in Michigan. Yaldo says that she learned of the cruise via a Homeric brochure at a Macy's in Michigan, but she also says that "Homeric bundled cruises into its promotional materials without identifying any particular supplier." (Compl. ¶ 25.) Even viewing everything in the light most favorable to Yaldo, there is nothing that suggests that Louis Cruises had any direct contacts with Michigan.[2]

The most that can be said is that Louis Cruises entered into some sort of agreement or relationship with Homeric by which Homeric would advertise and sell their cruise tickets in Michigan. But the Supreme Court held that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123. Although the Court noted that "a contractual relationship that 'envision[s] continuing and wide-reaching contacts' in the forum State" could confer specific jurisdiction, *Walden*, 134 S. Ct. at 1122, the example to which the Court referred was a franchisee's 20-year contract to operate a franchise restaurant, entered into with a franchisor based in the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479-80 (1985)). If Homeric were based in Michigan, Louis Cruises

---

[2] Yaldo repeatedly emphasizes that a cruise ticket attached to Louis Cruises' motion "conspicuously reads 'United States & Canada' on its front cover" (Resp. at 7, 8), but the relevant jurisdiction for which minimum contacts must be established is Michigan, not the United States.

6

might reasonably anticipate being haled into court here by virtue of its agreement with Homeric. But the connection Yaldo alleges is more tenuous, because Homeric is based in New York. Louis Cruises did not purposefully reach into Michigan by contracting with Homeric to advertise and sell cruises here.

Yaldo relies on a case that predates *Walden*: *Catalano v. BRI, Inc.,* 724 F. Supp. 1580 (E.D. Mich. 1989). In that case, the court found it had personal jurisdiction over claims against the operator of a hotel in Las Vegas for injuries the plaintiffs sustained while staying at the hotel. *Id.* at 1583. The hotel set aside a block of rooms every week to be sold by American Airlines, which regularly serviced flights to and from Michigan. *Id.* The court found that the hotel "gave American Airlines authority to act as its agent for the purpose of selling [its] hotel rooms to persons located in any area serviced by American Airlines." *Id.* Therefore, the court found, "due process is not offended by subjecting defendant . . . to a trial in this forum." *Id.* But it was pivotal to the *Catalano* court's analysis that American Airlines had a significant presence in Michigan: "American Airlines does, however, maintain sales offices within Michigan that may reserve travel packages which include rooms at the El Rancho Hotel. Such reservations may be made in Michigan, on behalf of Michigan residents." *Id.* at 1582. Here, even assuming in Yaldo's favor that Louis Cruises authorized Homeric to act as its agent to sell cruise tickets to Michigan residents, there is nothing that indicates that Homeric had a presence in Michigan that would make it reasonable for Louis Cruises to anticipate jurisdiction here. *See Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 831–32 (E.D. Mich. 2000) ("The *Catalano* court, as this Court has made clear, predicated its finding of purposeful availment on the fact that the defendant hotel had retained an agent, American Airlines, that maintained sales offices in Michigan and was authorized to market rooms to people in Michigan. In this case, Plaintiffs have provided no facts from which a

reasonable juror could infer that Defendants had retained an agent that maintained offices in Michigan." (citation omitted)); *Denham v. Sampson Investments*, 997 F. Supp. 840, 845 (E.D. Mich. 1998) ("The facts of *Catalano* are very different from the facts of the instant case. Here, plaintiffs have presented no evidence that the General Service Office of AA in New York is an agent for the Grand Milwaukee Hotel. Moreover, assuming that plaintiffs had presented such evidence, it would provide a basis for *New York* to exercise jurisdiction over the defendants, not *Michigan*.").

Yaldo argues that "rather than dismissing the case, it would be prudent for the parties to engage in limited discovery on the issue of whether this Court has personal jurisdiction over Louis Cruises." (Resp. at 10.) But neither Yaldo's response to the motion to dismiss nor her response to the motion Louis Cruises filed to stay discovery pending resolution of this motion provide any indication that such discovery might yield facts on which personal jurisdiction over Louis Cruises could be based. (*See* Dkt. 30, Louis Cruises' Mot. to Stay; Dkt. 33, Yaldo's Resp. to Mot. to Stay.)

In the cases Yaldo cites, in which the courts found jurisdictional discovery appropriate, the plaintiffs alleged or adduced facts that would arguably satisfy due process requirements. *See Murtech Energy Servs., LLC v. ComEnCo Sys.*, No. 13-cv-12721, 2014 WL 2863745, at *10 (E.D. Mich. June 24, 2014) ("The Court will permit such discovery given that the record is sufficiently muddy in a number of areas related to application of Michigan's long-arm statute and [Defendants'] due process rights."); *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 434 (S.D.N.Y. 2009) ("Plaintiffs have made a sufficient showing that the exercise of personal jurisdiction over [Defendant] would arguably satisfy due process, entitling plaintiffs to jurisdictional discovery."). That is not the case here. Viewing Yaldo's pleadings and evidence in

the light most favorable to her, the Court finds no indication that any facts could be established in discovery that would permit it to exercise jurisdiction over the claims against Louis Cruises. Jurisdictional discovery would therefore be an unnecessary and unjustified burden on Louis Cruises. *See Mkt./Media Research, Inc. v. Union Tribune Pub. Co.*, 951 F.2d 102, 106 (6th Cir. 1991) ("*Serras* should not be read to require the district court to hold an evidentiary hearing when, as in the instant case, a plaintiff's pleadings and affidavits are insufficient to make a prima facie showing of facts supporting the court's assertion of in personam jurisdiction."); *Pravettone v. Cargotec Oyj*, No. 13-11716, 2013 WL 3936467, at *5 (E.D. Mich. July 30, 2013) ("Plaintiffs have not put forward any jurisdictional facts, but rather simply speculate that discovery could establish personal jurisdiction. This is insufficient reason to deny [Defendant's] motion."); *Macomb Cnty. Bd. of Comm'rs v. StellarOne Bank*, No. 09-15040, 2010 WL 891247, at *4 (E.D. Mich. Mar. 10, 2010) ("Here, the lack of personal jurisdiction is clear, and discovery would serve no purpose.").

Because the Court finds that the Due Process Clause forecloses personal jurisdiction, it will not address whether Michigan's long-arm statute provides jurisdiction. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) ("We begin by examining the relevant Due Process considerations, recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it.") The Court also need not address Louis Cruises' arguments that service of process was not perfected, venue is improper, the claims are time-barred, and the allegations do not state a claim.

**IV. CONCLUSION AND ORDER**

For the reasons stated, the Court finds it does not have personal jurisdiction over Defendant Louis Cruises. The Motion to Dismiss (Dkt. 23) is therefore GRANTED and Yaldo's claims against Louis Cruises are DISMISSED. Louis Cruises' Motion to Stay Proceedings (Dkt. 30) is DISMISSED as moot.

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE

Dated:  November 26, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 26, 2014.

s/Deborah Tofil<br>
Case Manager